# Order

Michigan Supreme Court
Lansing, Michigan

November 12, 2010

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway
Alton Thomas Davis,
Justices

141818

In re O'BERRY, Minors.

_____

DEPARTMENT OF HUMAN SERVICES,
      Petitioner-Appellee,

v

                                  SC: 141818
                                  COA: 295077
                                  Oakland CC

CARRIE SMYTH,
                                  Family Division: 07-729356-NA
      Respondent-Appellant.

_____/

On order of the Court, the application for leave to appeal the September 7, 2010 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

CORRIGAN, J. (*dissenting*).

I would grant the respondent mother's application for leave to appeal in this significant child protection case. The trial court concluded, on the basis of close facts, that termination of respondent's rights to her three young children[1] was in the children's best interests under MCL 712A.19b(5). This statute was amended in 2008[2] to require an

_____

[1] Respondent's infant twins were removed from her care by the Department of Human Services (DHS) after respondent brought one infant to the hospital with a broken leg; although she promptly sought medical attention and had not been present when the injury was inflicted, the trial court concluded in part that she had failed to protect the child from his abusive father. Based in part on this incident, the court also granted the DHS's petition to remove respondent's new baby, who was born some months later to a different father. After the children were removed respondent was required to participate in a Parent-Agency Agreement administered by the DHS in order to regain custody of the children. The record reflects that she participated with some success, but also had lapses in participation.

[2] 2008 PA 199.

affirmative finding by the trial court "that termination of parental rights is in the child's best interests" before the court may terminate parental rights under the statutory subsections at issue here.  But the Legislature did not specify what quantum of proof—e.g. clear and convincing evidence or a preponderance of the evidence—is applicable to this crucial finding.  Nor did the trial court here specify what quantum of proof it applied to the evidence when it reached its decision.  Significantly, the court itself acknowledged that this was a difficult "disconcerting case."[3]  Further, the court relied in part on the equivocal testimony of a psychologist who opined that he was "leaning towards" recommending termination but was "not going to throw in the towel and say it's a hopeless situation."[4]  Accordingly, the applicable quantum of proof was critical to the outcome.  If this Court were to conclude that a prosecutor must prove that termination is in a child's best interests by clear and convincing evidence—just as the

---

[3] Indeed, the court began its ruling by listing respondent's good qualities and accomplishments.  The court found the fact that respondent had established a home for her children by the time of the trial "very impressive."  It found her efforts to pursue education "in pharmacy" reasonable and laudable.  It observed that she "doggedly pursued" creating a good life for herself and her children, and had attended "a great number of sessions" required by the DHS Parent-Agency Agreement although she lacked a vehicle and was undergoing a difficult pregnancy.  "Over all this period of time," said the court, "she's demonstrated a lot of strong qualities that [it] would expect will benefit her far into the future."  Nonetheless, the court concluded that her successes were "too little, too late" to afford permanency for the children.

[4] The psychologist, who evaluated respondent once prior to the best interests hearing, testified that "perhaps it would be better to terminate parental rights" because respondent made "heavy use of denial," was unwilling "to acknowledge any deficiencies or problems or shortcomings as a parent," and was "very likely to continue to be inconsistent in her ability to comply with the Court's expectations."  But he admitted that he had been unaware of some facts underlying the case.  For example, although he partially based his opinion on his understanding that she twice tested positive for marijuana after her children had been removed, he was unaware that she had successfully passed numerous other drug screens.  He was also unaware of other details such as that she was experiencing a high-risk pregnancy and was without a vehicle during the time she was required to comply with the DHS's programming.  Although he stated that such details would not affect his recommendation, his recommendations remained equivocal.  He stated:  "My recommendation was that because I don't know all the facts that consideration be given to termination of parental rights."  The court responded:  "What does that mean?  Is that a recommendation or a suggestion?"  The psychologist answered:  "That's where I'm leaning towards, your Honor.  That is what I feel based on the information that I have what might be the best for the children."  He added that he was "not going to throw in the towel and say it's a hopeless situation," but also concluded that the probability of respondent being noncompliant again was "high."

prosecutor must prove the initial grounds for termination by clear and convincing evidence, MCL 712A.19b(3)—a remand would be necessary for the trial court to consider the best interests evidence under this standard and to rearticulate, and potentially reverse, its ruling.

CAVANAGH, J., joins the statement of CORRIGAN, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

November 12, 2010

_____
Clerk

p1109